McCOY-BRANDT MACHINERY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10733.   Promulgated October 21, 1927.

1. INVESTED CAPITAL.—Petitioner at date of incorporation in 1915 acquired for stock an exclusive sales agency contract with the Allen-Bradley Co. *Held*, that no part of the value of this contract at date of acquisition could be included in invested capital for 1920. Evidence with respect to certain contracts alleged to have been acquired at date of incorporation *held* insufficient to disturb the Commissioner's determination with respect thereto.

2. EXPENSES.—GIFTS OR COMPENSATION.—Certain payments by petitioner to its employees at Christmas time *held* to represent additional compensation for services rendered rather than gifts.

3. EXPENSES.—During 1920 petitioner paid a part of the vacation expenses of certain of its employees in order to retain their services. *Held*, that the amounts so paid are deductible as ordinary and necessary expenses.

4. INVESTED CAPITAL.—Respondent's action in reducing invested capital by the amount of additional taxes for 1917 which were not paid until after the close of the taxable year *held* to be justified under section 1207 of the Revenue Act of 1926. *Appeal of Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

*A. Leo Ruslander, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

In this proceeding the petitioner seeks a redetermination of its income and profits-tax liability for the calendar year 1920, for which the Commissioner in his deficiency letter dated November 18, 1925, has determined a deficiency in the amount of $4,241.59. The petition alleges that the Commissioner committed four errors, namely, in reducing invested capital by the alleged value of certain agency contracts alleged to have been acquired for stock at the date of incorporation; in disallowing so-called "Christmas Gifts" to employees; in disallowing as a deduction from income that part of the expenses of employees' vacations which was paid by the petitioner; and in reducing invested capital by the amount of additional taxes for 1917 which were not paid until after the close of the taxable year 1920.

#### FINDINGS OF FACT.

The petitioner is a corporation organized under and existing by virtue of the laws of the Commonwealth of Pennsylvania, having its principal office and place of business at Pittsburgh. It was incorporated on October 13, 1915, and was the outgrowth of a partnership which began business in February, 1908. The business of the partnership and likewise that of the corporation was buying and selling machinery at retail and also acting as exclusive sales agents for certain machinery manufacturers. On October 18, 1915, the partnership made the following written offer to the corporation:

GENTLEMEN: We desire to make you a proposition in reference to taking over the entire busines of McCoy Brandt in exchange for $13,200 worth of stock in your corporation at itemized values of our business being as follows:

| | |
|---|---:|
| Cash | $1,500 |
| Book accounts | 2,500 |
| Stock of machinery on hand at cost | 3,160 |
| Agency contracts | 5,000 |
| Stationery and office fixtures and furniture | · 240 |
| Good Will, Leases | 800 |
| Total | 13,200 |

It is understood of course that you assume all accumulated accounts.
Yours very truly,
McCoy & Brandt.
Per W. E. Brandt.

The above offer of the partnership was accepted by the petitioner. Among the "Agency Contracts" taken over by the petitioner at the date of incorporation was a contract between the partnership as party of the second part and the Allen-Bradley Co., a corporation, party of the first part, entered into on December 31, 1910. This contract provided for the appointment by the party of the first part of the partnership as the sole sales agents for the Allen-Bradley Co.

for the term of one year from the date of the contract. The partnership was to receive a commission of 10 per cent on all goods sold in the specified territory. No commissions were to be paid on goods returned or on goods not paid for except in cases where goods were returned because of the fault of the party of the first part. Commissions were due the partnership on the 10th of the month following the month in which collections for the goods sold were made. The party of the second part was not responsible in any manner whatsoever for collections, shipments or deliveries of goods sold by or through them. The party of the first part was to furnish all advertising and descriptive literature considered necessary by it. The parties of the second part were not to handle any similar or competing line of goods. The partnership was to pay all the expenses of maintaining its own office, including all traveling expenses. The three paragraphs next to the last paragraph of the contract provide as follows:

It is understood and agreed that this contract is to continue in force for the period of one (1) year from the date hereof. At the expiration of one year from the date hereof either party may terminate the same upon thirty (30) days written notice, by mail or otherwise; in the event that no such notice is given, then and in that event the contract is to remain in force for another year.

The party of the first part also reserves the right to terminate this contract upon receiving notice of any breach of any of the terms of this contract by the parties of the second part.

It is further agreed that this contract is not transferable by the parties of the second part, except by written permission from the party of the first part.

The gross commissions received from the Allen-Bradley Co. by the partnership and the petitioner from 1911 to 1917, inclusive, were as follows:

| | | | |
|---|---|---|---|
| 1911 | $2,111.00 | 1915 | $425.20 |
| 1912 | 3,317.11 | 1916 | 2,644.71 |
| 1913 | 4,834.58 | 1917 | 728.14 |
| 1914 | 2,023.59 | | |

The actual cash value of the Allen-Bradley contract at the time the petitioner acquired it in 1915 was at least $5,000.

The petitioner continued to represent the Allen-Bradley Co. only until 1918.

The petitioner claimed as a part of its invested capital for 1920 the amount of $25,000 as representing the value of agency contracts aquired by it for stock at the date of incorporation. The Commissioner did not allow any part of the $25,000 to be included in the petitioner's invested capital.

On the books of account of the corporation the assets acquired in exchange for stock were set up exactly as they were in the offer to exchange such assets for stock. The agency contracts were valued at $5,000 and $5,000 of stock was issued therefor.

Attached to the petition is a copy of the Commissioner's notice of deficiency and a statement showing his computation of invested capital. In this statement, capital stock outstanding on January 1, 1921, is set up at $96,800 and earned surplus, as shown by the books, at $421. The record does not disclose whether the additional stock was sold for cash or issued in exchange for property.

On December 24, 1920, the petitioner paid bonuses to the following of its employees in the following amounts:

| | | | |
|---|---|---|---|
| Galbreth, sales manager | $300.00 | Young, warehouseman | $30.00 |
| Roth, secretary and salesman | 200.00 | McMillan, warehouseman | 20.00 |
| Krieger, bookkeeper | 200.00 | Burbank, warehouseman | 10.00 |
| Barton, salesman | 200.00 | Mailman, trainman and news- | |
| Schowl, stenographer | 62.50 | boy | 20.00 |
| Coyle, stenographer | 15.00 | | |
| Wiley, warehouseman | 75.00 | Total | 1,132.50 |

The above bonuses were authorized a few days before payment by Walter E. Brandt, who at that time owned approximately 98 per cent of the petitioner's outstanding stock. In addition to being the majority stockholder, Brandt was also president and treasurer of the corporation. In determining the amount of the bonus paid to each employee, Brandt took into consideration the length of time the employee was with the company, the type of work he did, the salary he was receiving and the responsibility he carried in his work. The payments in the amount of $1,132.50 were recorded in the petitioner's distribution cost book under the caption of "Christmas Gifts." In authorizing these payments Brandt, as president of the petitioner, intended them to be additional compensation for services rendered.

In making information returns to the Commissioner in connection with its annual return, the petitioner did not advise the Commissioner as to these payments or include them in the amount reported paid to the employees to whom payment in excess of $1,000 had been made during the year.

The Commissioner did not allow any part of the $1,132.50 as a deduction from gross income.

The Commissioner also disallowed as a deduction from gross income for the taxable year 1920 an amount of $450.35, representing a part of the petitioner's employees' vacation expenses which were paid by the petitioner. The demand for help in the petitioner's line of business was more pressing in 1920 than at any other time, and the petitioner considered it necessary to pay the traveling expenses of certain of its employees during their vacation period in order to retain in its employ the men whom it had specially trained and who were acquainted with the type of business in which the petitioner was engaged.

The respondent reduced the petitioner's invested capital for the year 1920 by the amount of $2,833.45, representing additional taxes determined by the respondent to be due for the year 1917 which were not paid by the petitioner until after the close of the year 1920.

OPINION.

GREEN: The issues involved in this proceeding are: (1) Whether the respondent erred in not allowing in invested capital any value on account of alleged agency contracts alleged to have been acquired by the petitioner for stock at the date of incorporation; (2) whether the respondent erred in not allowing as a deduction from gross income any portion of the $1,132.50 paid to the petitioner's employees on December 24, 1920; (3) whether the respondent erred in not allowing as a deduction from gross income any portion of the vacation expenses of the petitioner's employees paid by the petitioner; and (4) whether the respondent erred in reducing the petitioner's invested capital by the amount of $2,833.45, additional income and excess-profits taxes for 1917 not paid by the petitioner until after the close of the taxable year.

In connection with the first issue, the petitioner claims that at the time of incorporation it acquired for stock certain exclusive sales agency contracts having an actual cash value of $25,000. At the hearing, although much was said about alleged contracts with the Automatic Transportation Co. and the Cowen Truck Co., the petitioner was only successful in proving that at the time of incorporation it acquired from the predecessor partnership an exclusive sales agency for the Allen-Bradley Co., manufacturers of electric machinery and equipment. We have found from a consideration of all the evidence that the actual·cash value of the Allen-Bradley contract at the date acquired by the petitioner was at least $5,000.

Paragraph (a) (4) of section 326 of the Revenue Act of 1918 reads as follows:

Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in. (b) the par value of the stock or shares issued therefor, or (c) in the aggregate of 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest.

As to the distinction between tangible and intangible property, we must look first to the Revenue Act of 1918, which contains the following provisions:

The term "intangible property" means patents, copyrights, secret processes and formulae, good will, trade-marks, trade-brands, franchises, and other like property;

The term "tangible property" means stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than intangible property.

We are of the opinion that contracts of the type here under consideration are intangible property and that when such contracts are acquired in exchange for stock, they are subject to the limitations provided in the section of the revenue act quoted above.

We are unable to determine from the record the value of the intangibles acquired in exchange for stock, and for this reason are unable to determine to what extent, if any, the Allen-Bradley contract should be included in invested capital; moreover we can not ascertain from the record what proportion of the capital stock originally issued in exchange for agency contracts can be, or was, properly allocable to the Allen-Bradley contract. The Commissioner's action in reducing invested capital by the amount of $25,000, being the amount added thereto by the petitioner by reason of such agency contracts, is accordingly approved. Without evidence relative to the other contracts alleged to have been acquired by the petitioner at the date of incorporation we can do nothing but sustain the Commissioner's determination with respect thereto.

Addressing ourselves to the second and third issues, we are of the opinion that the petitioner is entitled to deduct from gross income for the taxable year 1920 the amounts of $1,132.50 and $450.35. See *Appeal of Boericke & Runyon*, 3 B. T. A. 684, and *Popular Dry Goods Co.* v. *Commissioner*, 6 B. T. A. 78.

The respondent's determination with respect to the last issue is approved upon the authority of *Appeal of Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

PHILLIPS and SIEFKIN concur in the result.